IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TONYA M. MILLER                                                                 PLAINTIFF

v.                    Civil No. 13-3057

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                      DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Tonya Miller, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") and supplement security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

Plaintiff protectively filed for DIB and SSI under Title II of the Act on November 3, 2009, and June 24, 2010, respectively, alleging an onset date of October 1, 2009, due to bipolar disorder, post traumatic stress disorder ("PTSD"), anxiety, depression, and memory problems. Tr. 34, 131-141, 180, 230-231, 238. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 63-71. An administrative hearing was held on August 30, 2011. Tr. 29-65. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 36 years old and possessed the equivalent of a high school education and certification as a certified nurse assistant ("CNA"). Tr. 22, 32, 37.

She had past relevant work ("PRW") experience as a CNA, cook, and cashier. Tr. 37, 166-172, 181, 222-229.

On October 17, 2011, the ALJ found Plaintiff's bipolar disorder and PTSD to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 14-16. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to work where the complexity of the tasks is learned and performed by rote, with few variables and little required judgment; where required supervision is simple, direct, and concrete; and where she has no contact with the general public. Tr. 16-17. With the assistance of a vocational expert, the ALJ the concluded that Plaintiff could perform work as a production worker, sewing machine operator, and hand packager. Tr. 23. \

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on March 15, 2013. Tr. 1-6. Subsequently, Plaintiff filed this action. ECF No. 1. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 8, 11.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the

Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-

AO72A
(Rev. 8/82)

(f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Discussion:

Of particular concern to the undersigned is the ALJ's RFC determination.  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Adequate medical evidence must therefore exist that addresses the claimant's ability to function in the workplace.  *See Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). The Court has held, however, that the ALJ is not at liberty to make medical judgments regarding the ability or disability of a claimant to engage in gainful activity where such inference is not warranted by clinical findings.  *McGhee v. Harris*, 683 F. 2d 256 (8th Cir. 1982).

The evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment.  *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996).  Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased.  *Id*.  Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." *Id.*  Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate.  *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999).  This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is

based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

In the present case, the Plaintiff suffers from bipolar I disorder and PTSD, as well as anxiety and depression. While she takes a variety of medications to treat her symptoms[1], the record makes clear that she continues to experience the mood swings that are common among patients suffering from bipolar disorder. Tr. 372-380, 382-401, 425-445, 542-558, 559-567, 568-579, 584-594, 596-598, 600-602, 604-607, 621-629. Record also document a remote history of psychiatric care to include hospitalization following several suicide attempts, sexual abuse as a child, and physical abuse. And, in March 2010, Plaintiff began regular appointments with Debra Reid, a counselor at Ozark Guidance Center ("OGC").

On December 14, 2010, Plaintiff underwent a mental evaluation with Dr. Ronald McInroe. Tr. 458-463. He acknowledged her history of multiple psychiatric hospitalizations as well as her arrest for writing a hot check in 2000. At the time of the exam, Plaintiff exhibited a dysphoric and tearful mood and affect. Dr. McInroe diagnosed her with bipolar disorder, PTSD, sexual abuse of a child victim, physical abuse of a child victim, generalized anxiety disorder with agoraphobia, marijuana abuse, and borderline personality traits. And, he assessed her with a global assessment of functioning ("GAF") score of 55. Dr. McInroe also concluded that she would experience difficulty sustaining persistence in completing basic work related tasks

---

[1] Plaintiff's medications included Budeprion XL, Seroquel.

and would be limited in her capacity to complete basic work-related tasks within an acceptable time frame.

On August 29, 2011, Ms. Reid completed a mental RFC assessment. Tr. 612-616. She indicated that she had seen Plaintiff for one hour appointments for therapy every two weeks since March 15, 2010. Further, Ms. Reid stated that Plaintiff suffered from bipolar I, PTSD, and cluster B personality disorder traits. She also assessed her with a GAF of 48. Ms. Reid noted that Plaintiff's symptoms worsened with stress, that she was prone to delusions in thinking when manic and suicide attempts when depressed, and that all recent work attempts had been thwarted by her manic and depressive cycles. Her prognosis was noted to be guarded. Ms. Reid indicated that Plaintiff would not be able to maintain any work skills over time. And, depending on her mood, at any given time, her ability to perform activities of daily living, function socially, and maintain attention and concentration would be unlimited to nonexistent. Further, she would likely miss more than four days of work per month.

Ms. Reid also noted that Plaintiff had used substances in the past to regulate her symptoms and relieve stress when she was not on medication. And, she had been counseled as to the danger to her liver that using substances while taking psychotropic medications might cause. However, it was Ms. Reid's opinion that her limitations were due to her diagnosis; not her substance abuse. This assessment was affirmed by Dr. Robert Demski, the psychiatrist overseeing Plaintiff's case at OGC. Tr. 618.

The ALJ chose to dismiss Ms. Reid/Dr. Demski's assessment, stating that it was not supported by the record. He also concluded that Plaintiff had not been totally honest with Ms. Reid concerning her drug use, and that this undermined Ms. Reid's assessment. However, we

disagree. The record makes clear that Ms. Reid was aware of Plaintiff's use of illegal drugs. We also note Ms. Reid's emphatic statement that Plaintiff's limitations were due to her diagnoses rather than her drug abuse[2]. Accordingly, we believe that remand is necessary to allow the ALJ to reevaluate Plaintiff's RFC in conjunction with her mental impairments.

Also of concern is the ALJ's use of Plaintiff's alleged failure to follow precise treatment protocol to discredit her subjective complaints. While it is true that Plaintiff was unable to undergo medication management regularly with the psychiatrist at OGC and did miss an occasional appointment, she did follow up with her primary care physician who prescribed her medications. The record makes clear that this was due to Plaintiff's financial situation and her lack of access to transportation, rather than an outright refusal to follow treatment protocol. As this was not considered by the ALJ, on remand, he is also directed to consider Plaintiff's argument that her financial situation excused her failure to follow her treatment plan. *See Osborne v. Barnhart,* 316 F.3d 809, 812 (8th Cir. 2003) (A lack of funds may justify a failure to receive medical care.).

## IV. Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

---

[2] We note that bipolar disorder can precipitate substance abuse, as a means by which the sufferer tries to alleviate her symptoms. Goodwin & Jamison, *supra,* at 219-25; Li-Tzy Wu et al., "Influence of Comorbid Alcohol and Psychiatric Disorders on Utilization of Mental Health Services in the National Comorbidity Survey," 156 *Am. J. Psychiatry* 1235 (1999); Edward J. Khantzian, "The Self-Medication Hypothesis of Addictive Disorders: Focus on Heroin and Cocaine Dependence," 142 *Am. J. Psychiatry* 1259, 1263 (1985).

DATED this 26th day of June 2014.

                                                /s/ *J. Marschewski*
                                            HON. JAMES R. MARSCHEWSKI
                                            CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)